**IN THE COURT OF APPEALS OF IOWA**

No. 22-1285
Filed January 24, 2024

**KENNETH CURTIS SHAW JR.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

    An applicant appeals the denial of postconviction relief. **AFFIRMED.**

    Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

    Considered by Tabor, P.J., and Greer and Buller, JJ.

**BULLER, Judge.**

Kenneth Curtis Shaw Jr., was charged with and convicted of the first-degree robbery of a Des Moines payday lender. *State v. Shaw*, No. 18-0421, 2019 WL 5790884, at *1 (Iowa Ct. App. Nov. 6, 2019). Shaw appealed his conviction to our court. *Id.* We rejected his challenge to the sufficiency of the evidence and conditionally affirmed and remanded for the district court to address a claim related to composition of the jury panel. *Id.* at *2, *4. The district court denied the jury-composition claim on remand. Shaw then filed a postconviction application asserting ineffective assistance of counsel. The postconviction court denied relief after trial, and Shaw appeals.

We review ineffective-assistance claims de novo. *Taylor v. State*, 352 N.W.2d 683, 684 (Iowa 1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A postconviction applicant claiming ineffective assistance must prove both (1) counsel's performance fell below reasonable standards and (2) if counsel had acted differently, there would be a reasonable probability of a different outcome at trial. *Id.* at 687, 694. Applying this case law, we turn to Shaw's three arguments on appeal.

Shaw's first claim concerns the admission of a gun at his criminal trial, which he claims reasonable counsel would have sought to exclude. But the criminal-trial transcript reveals Shaw "instructed" his trial counsel to withdraw the objection to the gun based on "a strategy" after discussing pros and cons. Shaw confirmed

this in a contemporaneous colloquy with the criminal-trial judge, during which Shaw acknowledged he was making a "strategic decision" and after which the judge made a finding that Shaw "knowingly and voluntarily" withdrew his objection to the gun. As that strategy unfolded at trial, Shaw's attorney used inconsistencies between the gun found on Shaw and the gun used in the robbery in an attempt to sow doubt. Like the postconviction court, we do not find trial counsel's strategic choices (enacted in full agreement with Shaw) fell outside professional bounds, nor do we find Shaw has proven the reasonable probability he would have been acquitted if counsel had objected to admission of the gun. *See Taylor*, 352 N.W.2d at 685 ("In deciding whether trial counsel's performance was deficient, we require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently.").

Shaw next claims trial counsel was ineffective in not further developing alleged inconsistencies in an eyewitness's descriptions. We agree with the postconviction court that trial counsel cross-examined the eyewitness at length (for about ten transcript pages) over the allegedly inconsistent descriptions, and the jury was able to assess the veracity of these identifications accordingly. We note Shaw's trial counsel advanced these same points in closing argument, tracking the reasonable-doubt instruction to argue the inconsistencies "should cause each and every one of you to pause or hesitate to act." We see no breach of duty in this approach.

We also find that no different impeachment strategy would have changed the outcome. The eyewitness identified Shaw in part because Shaw sought a loan from the witness at the same location, and the two spent about forty-five minutes

together filling out paperwork. *See Shaw*, 2019 WL 5790884, at *2. This was a credible identification. And the jury learned that Shaw lied to police about his whereabouts on the day of the robbery, which was substantive evidence of guilt that bolstered the State's strong case. *Id.* (citing *State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt.")). Shaw has not proven breach of duty or *Strickland* prejudice.

Last, Shaw claims trial counsel should have done more to develop an alleged juror-impartiality issue. On this issue, we agree with the State that Shaw's claim was not raised and decided by the postconviction court, and we cannot address it on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Because Shaw failed to carry his burden to prove ineffective assistance, we affirm the denial of postconviction relief.

**AFFIRMED.**